## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| ELIZABETH C. OKORAFOR, | § | |
| *Plaintiff*, | § | |
| | § | |
| vs. | § | Civil Action H-12-CV-1513 |
| | § | |
| SELECT MEDICAL, | § | |
| *Defendant*. | § | |

## SUMMARY JUDGMENT OPINION AND ORDER

This Title VII discrimination case is before the court on the parties' cross-motions for summary judgment. Having considered the parties' submissions, argument of counsel at a hearing on September 20, 2013, and the law, plaintiff's motion (Dkt. 31) is denied and defendant's motion (Dkt. 30) is granted.[1]

## Background Facts

Plaintiff Elizabeth Okorafor is a United States citizen of Nigerian origin who worked as a registered nurse for defendant Select Specialty Hospital - Houston, LP (SSH).[2] On January 3, 2011, Okorafor requested paid time off (PTO) from February 1 through February 28, 2011, giving the reason for her request as "burial."[3] The chief nursing officer at the time,

---

[1] Also pending are plaintiff's motion to strike defendant's motion (Dkt. 33) and defendant's objection to plaintiff's evidence (Dkt. 35). The motion is denied and objections overruled. The court is the finder of fact in this bench trial and will determine the relevance and weight of the evidence.

[2] The parties agree that SSH was Okorafor's employer and is the proper defendant. The named defendant, Select Medical, is the parent company of SSH.

[3] Okorafor's sister died unexpectedly in Houston on December 19, 2010. Dkt. 31 at 3.

Dava Smith, denied Okorafor's request because Okorafor had not accumulated enough paid time off (PTO) hours to cover the absence.[4] Okorafor was then scheduled to work her regular shifts in February, beginning February 5. Okorafor did not show up for work on February 6. She called Smith on February 7 to report that she was sick and needed to be removed from the schedule for 2 weeks. Smith requested a physician's statement certifying Okorafor's need to be out and the date she would be able to return to work. Okorafor supplied a statement from Dr. Gajula certifying that Okorafor was under his care on February 6 and 7 and was able to return to work on February 8, 2011. Okorafor was removed from the schedule for that weekend, but remained scheduled to work her remaining February shifts.

Some time between February 7 and February 11, Okorafor traveled to Nigeria. Okorafor did not show up for work on February 11 as scheduled and phoned to say she was sick. She also did not show up for work February 12-13, or for her next scheduled shift. On February 20, 2011, Smith emailed the CEO of SSH, Jesse Ruiz, to ask how to proceed regarding Okorafor. Ruiz responded that in accordance with SSH policies, Okorafor should be deemed to have abandoned her job. On February 22, 2011, human resources coordinator Ryan Deppe sent Okorafor a formal letter advising her "because you've failed to return to work on your scheduled return date of February 11th, you will be considered to have voluntarily resigned from your position. This falls in line with our no call/no show policy after two occurrences."

---

[4]    There is a dispute about the number of PTO hours Okorafor had available, but it is not material.

On February 25, 2011, SSH received a fax from Dr. J.N. Okeakpu, the Director of Medical Services at Mendel Hospital in Nigeria, stating that Okorafor was under treatment there from February 11 through February 23 and was able to resume her duties on February 28, 2011.[5]

The parties dispute whether Okorafor called in after February 11 and whether she was scheduled to work February 21, but there is no dispute that Okorafor traveled to Nigeria in February and did not show up for work or submit a physician statement between February 11 and her termination on February 22.

Okorafor wrote Ryan Deppe a letter dated March 28, 2011 in which she denied failing to call in regularly. Okorafor filed a charge of discrimination with the EEOC, and on May 16, 2012 filed this complaint alleging that SSH terminated her because of her Nigerian national origin in violation of Title VII.

**<u>Summary Judgment Standards</u>**

Summary judgment is appropriate if no genuine issues of material fact exist, and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). The party moving for summary judgment has the initial burden to prove there are no genuine issues of material fact for trial. *Provident Life & Accident Ins. Co. v. Goel*, 274 F.3d 984, 991 (5th Cir.

---

[5]  At the hearing, counsel stated that Okorafor traveled to Nigeria for mental health treatment because of the stigma attached to mental health treatment in the United States. But Dr. Okeakpu's statement says that she was treated in Nigeria for "pyeloneplonitis." The court found no reference to such a condition in a medical dictionary, but pyelonephritis is a kidney infection. STEDMAN'S MEDICAL DICTIONARY 694 (2002).

2001). Dispute about a material fact is "genuine" if the evidence could lead a reasonable jury to find for the nonmoving party. *In re Segerstrom*, 247 F.3d 218, 223 (5th Cir. 2001). "An issue is material if its resolution could affect the outcome of the action." *Terrebonne Parish Sch. Bd. v. Columbia Gulf Transmission Co.,* 290 F.3d 303, 310 (5th Cir. 2002).

The standard for granting summary judgment in Title VII cases is by now too familiar to warrant extended recitation. *Reeves v. Sanderson Plumbing Prods., Inc.*, succinctly summarizes the appropriate inquiry:

> Whether judgment as a matter of law is appropriate in any particular case will depend on a number of factors. Those include the strength of the plaintiff's prima facie case, the probative value of the proof that the employer's explanation is false, and any other evidence that supports the employer's case and that properly may be considered on a motion for judgment as a matter of law.

530 U.S. 133, 148-49 (2000). The court must draw all reasonable inferences in favor of the non-movant, and disregard all evidence favorable to the moving party that the jury is not required to believe. *Id.* at 150-51. Trial courts should not treat discrimination differently than other ultimate questions of fact for purposes of Rule 50 or 56. *Id.* at 148.

In a non-jury trial, the judge is the ultimate trier of fact. In such cases, the court may grant summary judgment where a trial would not enhance the court's ability to draw inferences and conclusions. *Nunez v. Superior Oil Co.*, 572 F.2d 1119, 1123-24 (5th Cir. 1978); *In re Placid Oil Co.*, 932 F.2d 394, 398 (5th Cir. 1991).

## Analysis

Okorafor has failed to produce any evidence sufficient to support a finding that her

4

national origin was a motivating factor in her dismissal.  First, she cannot show that similarly situated employees were treated differently.  She argues that Ken Beauchamp and Derek Williamson missed work due to illness without being terminated. Beauchamp was Okorafor's supervisor and Williamson was a Chief Nursing Officer. Dkt. 30-1, ¶¶ 9-10. While both men were absent due to illness, there is no evidence that the absences were in violation of SSH's "no call/no show" policy or any other policy. The record shows that Williamson was absent on a pre-approved FMLA leave (Dkt. 30-18), and that Beauchamp timely submitted physician excuses (Dkt. 30-17). Moreover, there is no evidence that Beauchamp or Williamson had a history of poor attendance or tardiness, as did Okorafor.  Dkt. 30-23; 30-24; 30-25; 30-4 at 5. Thus, Okorafor cannot show that she was discharged for conduct nearly identical to that engaged in by Beauchamp and Williamson. *See Okoye*, 245 F.2d at 514-15.

Next, there is no evidence, despite Okorafor's insistence, that SSH's stated reason for her termination is false. Okorafor argues that the termination letter gives a false reason for her termination because she called in on February 11 and was in "constant contact" with SSH "as it relates to the days when I was scheduled to work." Dkt. 30-11. But the termination letter states that she was terminated for failing to return to work on her scheduled return date of February 11, and that basic fact is undisputed. Okorafor did not return to work on February 11 despite having submitted a physician note stating that she was able to resume her duties on February 8 (Dkt. 30-6). Indeed, she was in Nigeria on February 11 and could not possibly have shown up for work in Houston that day, sick or not.

5

SSH's "no call/no show" policy provides that an employee must call in every day of absence, a physician statement may be required for any absence of more than 3 days, and in the case of employees consistently absent, a statement will be required for all absences, including one-day absences. Declaration of Pamela Simpson (Dkt. 30-1), ¶ 6; Dkt. 30-14 at 8. Okorafor was aware of this policy. Dkt. 30-2, 30-3. Okorafor was scheduled to work February 5-7, 11-13, 19-21, and 25-27, 2011.[6] The only scheduled day she worked was February 5. Even if she called in on February 3, 4, 7, 11, 12, and 18 as she maintained in her March 28, 2011 letter (Dkt. 30-11), she violated this policy because there is no evidence that she called in every day she was absent, and she did not provide an updated physician's statement to explain why she could not return to work on February 8 as previously reported.[7]

Finally, whether or not the legitimate reason for termination expressed in the February 22, 2011 letter is based on accurate facts, there is no evidence that the reason is mere pretext for discrimination. "Simply disputing the underlying facts of an employer's decision is not sufficient to create an issue of pretext." *LeMaire v. Louisiana Dept. of Transp. and Dev.*, 480 F.3d 383, 391 (5th Cir. 2007) (citing *Sandstad v. CB Richard Ellis, Inc.*, 309 F.3d 893, 899 (5th Cir.2002) ("Merely disputing [the employer's] assessment of [the employee's]

---

[6]     Dkt. 30-1, ¶ 21; Dkt. 30-12.  There is a dispute as to whether Okorafor was scheduled to work February 18-20 or 19-21. There is no indication that the schedule sworn to by Pamela Simpson is unauthentic. In any event, the dispute is immaterial given Okorafor's absence on all the dates.

[7]     Even the post-termination statement she provided from Dr. Okeakpu in Nigeria arguably does not meet the policy requirements because it does not "attest to the need to be absent from work" as opposed to "the employee's diagnosis." Dkt. 30-4 at 8.

performance will not create an issue of fact.")); *see also Crawford v. Formosa Plastics Corp.*, 234 F.3d 899, 902 (5th Cir. 2000) (a mere scintilla of evidence of pretext does not create an issue of material fact in all cases). To the extent that Okorafor contends that SSH did not follow its no call/no show policy, the Fifth Circuit has rejected attempts to show pretext based solely on an employer's failure to follow its own policy. *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 346 (5th Cir. 2007).

In sum, there is simply nothing in the record that ties the decision to terminate Okorafor to her national origin. As previously noted, Okorafor has not shown that other non-Nigerians were treated differently under similar circumstances. She argues that she was not promoted during her seven years of employment,[8] but there is no indication that her national origin is the reason. Nor is there any other evidence of animosity by SSH towards Nigerians. At the hearing, counsel represented that approximately 10 employees of Nigerian origin had been terminated by SSH between 2009 and 2011. This representation does not appear in Okorafor's briefing, and there is no evidence in the record to support it.[9]

**Conclusion and Order**

---

[8]  SSH disputes this, stating "on March 12, 2006 [Okorafor] was promoted to the rotating position of Charge Nurse." Dkt. 30 at 4.

[9]  At the hearing counsel referred to the deposition of Ryan Deppe, and at the court's instruction he submitted the deposition to the court. Counsel asked Deppe if he know any of a "bunch of people of Nigerian national origin that were terminated at (SSH) for one reason or another." Deppe's response to each name was that it was not familiar or, in the case of Chioma Okeke, that the name was familiar but he does not recall terminating her. Deppe Dep. at 132-34. Counsel's unsupported assertion in a deposition question that certain individuals are Nigerian and were terminated is not evidence.

The court concludes that plaintiff has not met her burden to create a genuine issue of material fact on her discrimination claim. For this reason, plaintiff's motion for summary judgment (Dkt. 31) is denied and defendant's motion for summary judgment (Dkt. 30) is granted.  This case is dismissed with prejudice, and a take nothing judgment will be entered on plaintiff's claims.


Signed at Houston, Texas on September 30, 2013.


Stephen Wm Smith
United States Magistrate Judge